**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

*(Electronically Filed)*

| | |
|---|---|
| FRANKLIN ELDRIDGE, Individually and on behalf of all others similarly situated, ) ) ) | Case No. 3:16-CV-536-DJH |
| *Plaintiffs*, ) ) | |
| v. ) ) | CLASS ACTION COMPLAINT |
| ) | JURY TRIAL DEMANDED |
| CABELA'S INCORPORATED, a Delaware ) Corporation, ) ) | |
| *Defendant.* ) | |

**SERVE:      Registered Agent**
**Corporation Service Company**
**421 West Main Street**
**Frankfort, Kentucky  40601**

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Franklin Eldridge ("Eldridge" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Cabela's Incorporated, ("Cabela's" or "Defendant"), to stop its practice of placing calls using an "automatic telephone dialing system" ("ATDS") and using "an artificial or prerecorded voice" to the cellular telephones of consumers nationwide without their prior express consent, as well as to obtain redress for all persons injured by its conduct.  Plaintiff, for his complaint, alleges the following upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

1

## NATURE OF THE ACTION

1.      Defendant Cabela's is a corporation organized under the laws of Delaware and headquartered in Sidney, Nebraska. Cabela's sells sporting goods and outdoor equipment, such as fishing and hunting gear.

2.      The Telephone Consumer Protection Act ("TCPA), 47 U.S.C. § 227, et seq. and its implementing regulations, 47 C.F.R. §64.1200, *et seq*. prohibit companies, such as Cabela's, from placing calls using an ATDS ("autodialed calls") and using "an artificial or prerecorded voice" ("prerecorded calls") to cellular telephones without first obtaining consent. Cabela's has violated, and continues to violate, the TCPA and its regulations by placing autodialed calls and prerecorded calls to cellular telephone subscribers (a) who had recycled (or reassigned) cellular telephone numbers who have not expressly consented to receiving such calls and/or (b) who have expressly requested not to receive such calls.

3.      The TCPA was enacted to protect consumers from unauthorized calls exactly like those alleged in this Complaint – autodialed calls and prerecorded calls placed to cellphone numbers without each consumer's prior express written consent.

4.      By making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls intentionally interfered with Plaintiff and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendant also caused substantial injury to Plaintiff and the Classes'

cellular phones by causing wear and tear on their property, consuming battery life, and appropriating cellular minutes.

5.      In response to Defendant's unlawful conduct, Plaintiff filed the instant lawsuit, seeking an injunction requiring Defendant to cease placing autodialed and prerecorded calls to cellular telephones without the express consent of the recipient, prevent similar conduct by Defendant in the future, as well as an award of statutory damages to the members of the putative classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

6.      Plaintiff Franklin Eldridge is a natural person domiciled in the Commonwealth of Kentucky.

7.      Defendant Cabela's is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at One Cabela Drive, Sidney, Nebraska 69160. Defendant Cabela's regularly does business throughout the State of Kentucky and in this District.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 because they arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

9.      The Court has personal jurisdiction over Defendant and venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because Defendant transacts significant amounts of business within this District, operating three retail stores and employing hundreds of employees in the Commonwealth of Kentucky, and because the conduct and events giving rise to Plaintiff's claims occurred in and/or were directed to this District.

## COMMON FACTUAL ALLEGATIONS

10.     Cabela's is a specialty retailer and is the world's largest direct marketer, of

hunting, fishing, camping, and related outdoor merchandise.  In 2015, Cabela's had nearly $4

billion in revenue.

11.     At the end of 2015, Cabela's operated 77 retail stores in 36 states and in six

Canadian provinces.

12.     Cabela's, through a wholly-owned bank subsidiary, World's Foremost Bank

("WFB" or "Cabela's CLUB"), issues and manages the Cabela's CLUB Visa credit card, a

rewards based credit card program. WFB is a special purpose, FDIC insured, Nebraska state-

chartered bank.

13.     During 2015, Cabela's had approximately 1.9 million active credit card accounts.

14.     When consumers sign up for a Cabela's CLUB Visa credit card issued by WFB,

they are presented with disclosures that make it clear that Defendant makes autodialed and

prerecorded calls:

> You agree that WFB, its affiliates and agents ("Covered Parties") has express consent to contact you at any telephone number you provide to WFB, or from which you call or may be called by WFB (including but not limited to telephone numbers publically associated with you), and you further agree that such contacts are not unsolicited. You additionally agree that the Covered Parties may contact you at those number(s) via text message, automatic dialer calls, live operator and/or pre-recorded/artificial voice messages. You agree to be contacted by the Covered Parties via all of these methods whether or not the phone number is a home phone or work phone, or whether it connects to any type of mobile/wireless device, and also regardless of whether you will be charged by your telecommunications service provider for receipt of the calls/messages at those phone number(s).
>
> https://www.cabelas.com/assets/instantcredit/regs.html

15.     Cabela's also represents how it utilizes autodialed and prerecorded calls when attempting to collect debts from a Cabela's CLUB Visa credit card holders:

> "*Collection and Recoveries*. We employ a "cradle to grave" collection approach whereby a collector will work all delinquency categories. We classify an account as delinquent when the minimum payment due on the account is not received by the payment date specified by the statement cycle. Accounts are placed in collection status with an internal or third party collector at various stages of delinquency. All delinquent accounts enter collections no later than 15 days delinquent. **_We employ an autodialer_**, which distributes accounts to collectors. Current account to collector ratios are as follows:" (emphasis added)

> http://www.nasdaq.com/markets/ipos/filing.ashx?filingid=2765524

16.     Pursuant to the TCPA, a company must obtain prior express consent before using an ATDS or a prerecorded message when calling a cellular telephone. *See* 47 U.S.C. § 227, *et seq*. In many instances, Cabela's calls to consumer's cellular telephones violate the TCPA because (1) the telephone owner did not consent to receiving the calls (i.e., the consent, if it was obtained at all, was obtained from the prior owner of that telephone number) and/or (2) the current cellular telephone owner has expressly requested not to receive such calls.

17.     Indeed, last year, the FCC explicitly held that:

> the TCPA requires the consent not of the intended recipient of a call, but of the current subscriber (or non-subscriber customary user of the phone) and that caller best practices can facilitate detection of reassignments before calls. We generally agree with commenters who oppose granting these requests that there are solutions in the marketplace to better inform callers of reassigned wireless numbers; that businesses should institute new or better safeguards to avoid calling reassigned wireless numbers and facing TCPA liability; and that the TCPA requires consent from the actual party who receives a call.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, WC No. 07-135, FCC 15-72 (rel. July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order.

18.     While some Cabela's customers may elect to receive autodialed and/or prerecorded calls, anyone in the United States may receive autodialed and/or prerecorded calls from Cabela's on their cellular phone even if they do not have any relationship with Cabela's. As happened with Plaintiff, Cabela's places autodialed and prerecorded calls to owners of recycled cellular numbers (many of whom do not even have a relationship with Cabela's, such as a credit card account) who have not consented to receiving such autodialed or prerecorded calls. For various reasons, cellular telephone subscribers deactivate and relinquish their cellular telephone numbers. Once deactivated, the cellular telephone carrier reassigns the number to another subscriber – a practice known as "recycling."  Recycling times (i.e., the time between deactivation and reassignment) vary across carriers, generally ranging from thirty (30) days to six (6) months depending on location and demand. During the recycling period, the cellular telephone number is considered disconnected.

19.     In some instances, the prior owner of a recycled telephone number may have consented to receiving autodialed and/or prerecorded calls from Cabela's. But, even if the prior owner consented, that consent does not transfer to the new recycled cellular number's owner.

20.     The mobile marketing industry is acutely aware of cellular number recycling and, in particular, the risk associated with placing autodialed and/or prerecorded calls to non-consenting recycled numbers. To help mobile marketers navigate regulatory compliance, the Mobile Marketing Association ("MMA") publishes guidelines based on accepted industry practices for all mobile marketers.  In its October 2012 U.S. Consumer Best Practices for Messaging, the MMA recommends that mobile marketers, such as Cabela's, "have appropriate and effective systems and processes for managing deactivation and recycled number information. These systems and processes should be designed to ensure that mobile content programs

subscribed to by previous holders of a specific phone number do not continue to be delivered or billed to a subsequent holder of that number when it is reassigned." The MMA further advises mobile marketers to "process deactivation information within three business days of receipt."[1]

21.     In response to the liability risk associated with recycled numbers, numerous commercially available services exist to help mobile marketers, such as Cabela's, identify recycled numbers and non-consenting cellular subscribers in real-time. For instance, companies such as Neustar[2] Experian[3], Early Warning[4], Idiology[5], and Infutor[6] advertise their abilities to instantly identify and flag disconnected telephone numbers from cellular telephone number data lists on a recurring basis (such as weekly or monthly) or on a real-time basis. This type of service can identify disconnected numbers before they are recycled, thereby alerting mobile marketers that any consent associated with those telephone numbers has been terminated. In addition, these services help telemarketers and debt collectors ensure that companies are: (1) identifying the *current* phone type: landline or wireless before they call, (2) verifying in real-time the current owner of a phone number to avoid calling a recycled phone number, (3) updating and appending accurate address and phone information, and (4) identifying active phone numbers.

22.     Despite industry guidelines, commercially available resources and the obvious lack of consent associated with recycled numbers, Cabela's fails to take the necessary steps to insure that its autodialed and/or prerecorded calls are placed only to consenting recipients.

---

[1]The MMA is a global trade organization that issues codes of conduct, best practices, guidelines, rules and instructions for companies engaged in mobile marketing. Its U.S. Consumer Best Practices for Messaging are based on accepted industry practices, common wireless carrier policies and regulatory guidance. With over 800 members, the MMA is the preeminent source for mobile marketing information and expertise
[2] https://www.neustar.biz/services/tcpa-compliance
[3] http://www.experian.com/assets/consumer-information/white-papers/Flyer-TCPA-110215.pdf
[4] https://www.earlywarning.com/pdf/mnv-tcpa-infographic.pdf
[5] https://www.idology.com/TCPA_number_verification
[6] http://www.infutor.com/industry-data-solutions/tcpa-compliance/

23.     To that end, Cabela's simply treats the new recycled cellular telephone number owner as if he or she were the previous owner. That is, if the previous owner gave consent to receive Cabela's autodialed and/or prerecorded calls, Cabela's continues to treat that consent as the consent of the new (unassociated) owner. New owners are then forced to incur the cost and bother of receiving Cabela's autodialed and/or prerecorded calls.  Notably, new owners are provided no express means to contact Cabela's to make the autodialed and/or prerecorded calls stop. Sometimes, the autodialed and/or prerecorded calls do not even identify "Cabela's" as the sender or maker of the calls, and consumers, having no prior relationship with Cabela's, may be completely unaware that the autodialed and/or prerecorded calls are coming from Cabela's. And, as evidenced by numerous complaints on internet message boards, Cabela's often disregards consumers' "stop" requests.

24.     Cabela's knows, or consciously disregards the fact, that its autodialed and/or prerecorded calls are placed to non-consenting, recycled cellular number subscribers. Indeed, Cabela's has received numerous consumer complaints alerting it to this very fact and requesting that the autodialed and/or prerecorded calls stop. Ultimately, Cabela's is responsible for verifying cellular telephone number ownership and obtaining consent before placing autodialed and/or prerecorded calls to cellular telephone subscribers. Even with prior cellular subscriber consent, Cabela's is liable under the TCPA for placing autodialed and/or prerecorded calls to cellular numbers reassigned to new subscribers without the new subscriber's consent. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012) (under the TCPA, "[c]onsent to call a given number must come from its current subscriber," not its prior subscriber); *Breslow v. Wells Fargo*, 2014 WL 2565984 (11th Cir. 2014) (consent from "called party" means consent from the person subscribing to the called number at the time the call was made, not the former

subscriber); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, ¶ 123, 18 FCC Rcd. 14014, 2003 WL 21517853 (2003) ("we reject proposals to create a good faith exception for inadvertent autodialed or prerecorded calls to wireless numbers…")

25.     Given the multitude of readily available commercially feasible resources to identify such consumers, Cabela's had ready means to identify those consumers or obtain their consent before placing autodialed and/or prerecorded calls.

26.     Cabela's also places autodialed and/or prerecorded calls to cellular subscribers who have expressly "opted-out" or requested not to receive its autodialed and/or prerecorded calls. Notably, many of these cellular subscribers never consented to receiving Cabela's autodialed and/or prerecorded calls in the first place. But, even with prior consent, Cabela's is required to honor each stop-request as a termination of any prior consent. Accordingly, any autodialed or prerecorded calls made to a cellular subscriber after receiving an express stop request is done without express consent.

27.     Cabela's simply ignores statutory duties and accepted industry guidelines. Instead, Cabela's makes it notoriously difficult for consumers to opt-out or unsubscribe from autodialed and/or prerecorded calls.

28.     Despite receiving numerous express stop requests from cellular subscribers, Cabela's continues to place autodialed and/or prerecorded calls to these subscribers, sometimes for months afterwards.

29.     Cabela's knows, or consciously disregards the fact, that its autodialed and/or prerecorded calls to these cellular subscribers are unauthorized.

30.     The following sample of consumer complaints regarding autodialed and/or

prerecorded calls evidences Cabela's practice of disregarding recycled numbers and placing autodialed and/or prerecorded calls to non-consenting (and often non-Cabela's customer) cellular telephone owners:

- Called and when answered dead air....then disconnect. - http://whocallsme.com/Phone-Number.aspx/8773386191

- Keep receiving these infuriating messages. They then hang up the phone. - http://callercheck.org/phonenumber/8773386191

- The person said they were calling about our Cabela's VISA card. They would not tell the spouse what it was in regards to but asked my name, which I didn't give them. They have been calling our number several times a day. - http://findwhocallsyou.com/1-877-338-6191

- This number will call back to back to back. - http://findwhocallsyou.com/1-877-338-6191

- Calls 20-30 times a day! Hangs up, never leaves a message! - http://www.smallercaller.com/numbers/1-877-338-6191

**FACTS SPECIFIC TO PLAINTIFF FRANKLIN ELDRIDGE**

31.     Plaintiff Franklin Eldridge is the subscriber to and customary user of a personal cellular telephone number.

32.     In or around February 2016, Plaintiff obtained a new cellular telephone number from Cricket Wireless. Shortly after obtaining his new cell phone number, Plaintiff began receiving autodialed and prerecorded calls to his cellular telephone number from Cabela's, in an attempt to collect an alleged outstanding debt owed by an unknown third party named "Jonathon Reed," presumably a prior owner of Plaintiff's cellular telephone number.

33.     Plaintiff Eldridge has received (and continues to receive) approximately 5-10 autodialed and/or prerecorded calls on his cellular telephone number each week, all seeking to collect an outstanding debt allegedly owed by the prior owner of Plaintiff's cellular telephone number. Below is a partial log of the calls that Plaintiff has received from Defendant from 877-338-6191

10

and 800-707-1374:





(Figure 1.)

34.     In some cases when Plaintiff answers Cabela's calls, he hears a pre-recorded message, and other times the calls are silent and then disconnects, which often signifies that the call was made using an autodialing system without human intervention. Other times, Plaintiff noticed a pause and then an agent came onto the line to speak, instead of a mere hang-up.

35.     Plaintiff is not a Cabela's customer and never provided his consent for Cabela's to contact him. He did not express an interest in receiving information about Cabela's to any person or entity, including Defendant.

11

36.     Plaintiff did not provide his phone number to Defendant or any third-party operating on its behalf, let alone provide his consent to receive autodialed and/or prerecorded calls from Cabela's.

37.     Defendant, or others acting on its behalf, placed these autodialed and/or prerecorded calls to Plaintiff and thousands of members of the putative Classes using equipment having the capacity to store or produce telephone numbers to be called and to dial such numbers, *en masse*, simultaneously and without human intervention.

38.     Starting in February 2016, Plaintiff has repeatedly asked Defendant to stop calling him, but Defendant has continued to place autodialed and prerecorded calls to Plaintiff, including as recently as July 19, 2016, despite Plaintiff's requests for them to stop calling and his advising them, on no fewer than three separate occasions, that he was not the person they were seeking and to stop calling him.

## CLASS ALLEGATIONS

39.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and the four classes defined as follows:

**Autodialed No Consent Class**: All persons in the United States from the last four years to the present who (1) Cabela's (or a third person acting on behalf of Cabela's) called using an ATDS, (2) on the person's cellular telephone number, (3) for the purpose of selling Defendant's products and services, and (4) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.

**Pre-recorded No Consent Class**: All persons in the United States from the last four years to the present who (1) Cabela's (or a third person acting on behalf of Cabela's) called, (2) on the person's cellular telephone, (3) using a pre-recorded voice, and (4) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.

**Autodialed Stop Class**: All persons in the United States from the last four years to the present who (1) Cabela's (or a third person acting on behalf of Cabela's)

called using an ATDS, (2) on the person's cellular telephone number, (3) after the person informed Cabela's that s/he no longer wished to receive calls from Cabela's, and (4) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.

**Pre-recorded Stop Class**: All persons in the United States from the last four years to the present who (1) Cabela's (or a third person acting on behalf of Cabela's) called, (2) on the person's cellular telephone, (3) used a pre-recorded voice, (4) after the person informed Cabela's that s/he no longer wished to receive calls from Cabela's, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.

40.    The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

41.    **Numerosity**: The exact number of members within the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has made telephone calls to tens of thousands of consumers who fall into the definition of the Classes. Members of the Classes can be identified through Defendant's records.

42.    **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes, in that Plaintiff and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct.

43.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

44.     **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

> (a)     Whether Defendant used an ATDS;
>
> (b)     Whether Defendant's conduct violated the TCPA;
>
> (c)     Whether Defendant continued to call members of the Classes after they requested to have the calls stopped;
>
> (d)     Whether Defendant had prior written express consent to call members of the Autodialed No Consent Class and the Prerecorded No Consent Class;
>
> (e)     Whether Cabela's had a duty to filter out recycled numbers from its call list; and
>
> (f)     Whether Plaintiff and the members of the Classes are entitled to statutory and treble damages based on the willfulness of Defendant's conduct.

45.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## COUNT I
### Violation of the TCPA, 47 U.S.C. § 227
### (On behalf of Plaintiff and the Autodialed No Consent Class)

37.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

38.     Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiffs and the other members of the Autodialed No Consent Class—without their prior express written consent—in an effort to sell its products and services.

39.     Defendant failed to provide any of the language required to obtained prior express written consent under the TCPA, including a disclosure that the consumer was consenting to being called with an autodialer or that providing his or her cellphone number wasn't a requirement of purchase.

40.     Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

41.     Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Autodialed No Consent Class simultaneously and without human intervention.

42.     By making unsolicited telephone calls to Plaintiff and members of the Autodialed No Consent Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

43.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Autodialed No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

44.     Should the Court determine that Defendant's conduct was willful and knowing, the Court should, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

### COUNT II
### Violation of the TCPA, 47 U.S.C. § 227
### (On behalf of Plaintiff and the Pre-recorded No Consent Class)

45.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46.     Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Pre-recorded No Consent Class on their cellular telephone in an effort to sell its products and services using a pre-recorded voice as defined in the TCPA.

47.     Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

48.     Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Pre-recorded No Consent Class simultaneously and without human intervention.

49.     By making unsolicited telephone calls to Plaintiff and members of the Pre-

16

recorded No Consent Class's cellular telephones using a pre-recorded voice, Cabela's violated 47 U.S.C. § 227(b)(1)(B) by doing so without prior express consent.

50.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Pre-recorded No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

51.     In the event that the Court determines that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Pre-recorded No Consent Class.

**COUNT III**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Autodialed Stop Class)**

52.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53.     Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Autodialed Stop Class on their cellular telephone after such persons had informed Defendant that they no longer wished to receive such calls from Defendant.

54.     Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

55.     Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Autodialed Stop Class simultaneously and without human intervention.

56.     By making unsolicited telephone calls to Plaintiff and other members of the Autodialed Stop Class's cellular telephones after they requested to no longer receive calls,

Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by continuing to call them without prior express consent.

57.     As a result of Defendant's unlawful conduct, Plaintiff and the other members of the Autodialed Stop Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

58.     Should the Court determine that Defendant's conduct was willful and knowing, the Court should, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed Stop Class.

**COUNT IV**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Pre-recorded Stop Class)**

59.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

60.     Defendant made unsolicited and unwanted pre-recorded calls to telephone numbers belonging to Plaintiff and the other members of the Pre-recorded Stop Class on their cellular telephone after such persons had informed Defendant that they no longer wished to receive such calls from Defendant.

61.     Defendant made the telephone calls using equipment that had the capacity to play a pre-recorded voice message and to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

62.     Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Pre-recorded Stop Class simultaneously and without human intervention.

63.     By making unsolicited telephone calls to Plaintiff and other members of the Pre-

recorded Stop Class's cellular telephones using a pre-recorded voice after they requested to no longer receive such calls, Cabela's violated 47 U.S.C. § 227(b)(1)(B) by doing so without prior express consent.

64.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Pre-recorded Stop Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

65.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Pre-recorded Stop Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Franklin Eldridge, individually and on behalf of the Class, prays for the following relief:

A.     An order certifying the Classes as defined above, appointing Plaintiff Franklin Eldridge as the representative of the Classes, and appointing his counsel as Class Counsel;

B.     An award of actual and statutory damages to be paid into a common fund for the benefit of the Class;

C.     An order declaring that Defendant's actions, as set out above, violate the TCPA, that Cabela's used an ATDS, that Cabela's used a pre-recorded voice, and that Cabela's failed to filter out recycled phone numbers or honor stop calling requests;

D.     A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

E.      An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

F.      An order requiring Defendant to identify any third-party involved in the text messaging activities as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

G.      An injunction requiring Defendant to cease all unsolicited cellular telephone call activities, and otherwise protecting the interests of the Class, prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment, prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA, and prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

H.      An award of reasonable attorneys' fees and costs; and

I.      Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: August 22, 2016

*/s/ Elisabeth S. Gray*
Elisabeth Gray
MIDDLETON REUTLINGER
egray@middletonlaw.com
401 South Fourth Street,
Suite 2600
Louisville, KY 40202
 (502) 584-1135

Stefan Coleman, Esq.*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscaynve Blvd, 28th Floor
Miami, Fl 33131
law@stefancoleman.com
(877) 333-9427

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

* *Pro hac vice* application to be filed.

*Attorneys for Plaintiff Franklin Eldridge,*
*Individually, and on Behalf of Others Similarly*
*Situated, the Putative Class*

MR 409360v1

21